**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**LATEASHA ZACKERY,**

Plaintiff,

v.

**WELLS FARGO BANK, N.A.,**

Defendant.

Case No.: ___________________

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

## Complaint and Demand for Jury Trial

Plaintiff Lateasha Zackery ("Plaintiff"), by and through undersigned counsel, sues Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") and alleges as follows:

## Nature of the Action

1. This is an employment-discrimination and retaliation action arising from Wells Fargo's race-, color-, and sex-based mistreatment of Plaintiff; its failure to correct a hostile work environment after Plaintiff complained; its selective discipline of Plaintiff; and the intolerable conditions that forced Plaintiff to resign.

2. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the Florida Civil Rights Act of 1992 ("FCRA"), sections 760.01 through 760.11, Florida Statutes; and 42 U.S.C. § 1981.

## Jurisdiction and Venue

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law.

4. This Court may grant legal and equitable relief under 42 U.S.C. §§ 1981, 1981a, and 2000e-5(g).

5. This Court has supplemental jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the unlawful employment practices occurred in Broward County, Florida, including at the Wells Fargo branch located at 4511 Weston Road, Weston, Florida 33331.

7. Assignment to the Fort Lauderdale Division is appropriate because Plaintiff resided in Miramar, Florida, and the relevant Wells Fargo workplace was in Weston, Florida, both within Broward County.

**Parties**

8. Plaintiff is a Black woman and a resident of Broward County, Florida. She worked for Wells Fargo for approximately eleven years and most recently held the position of Senior Premier Banker.

9. Defendant Wells Fargo Bank, N.A. is a national banking association that conducts business in Florida and employed Plaintiff in Broward County. At all relevant times, Wells Fargo was an employer within the meaning of Title VII and the FCRA and had fifteen or more employees.

**Administrative Prerequisites**

10. On October 20, 2025, Plaintiff signed, and on October 21, 2025, timely filed, a charge of discrimination with the United States Equal Employment Opportunity Commission, Charge No. 510-2026-00584, alleging race, color, and sex discrimination, a hostile work environment, and retaliation by Wells Fargo.

11. Under section 760.11(1), Florida Statutes, Plaintiff's filing with the EEOC constituted filing with the Florida Commission on Human Relations, and the EEOC filing date is the filing date for purposes of the FCRA.

12. On August 7, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights concerning that charge.

13. More than 180 days elapsed after the charge was filed without a determination of reasonable cause by the Florida Commission on Human Relations. Plaintiff is therefore entitled to bring this civil action under section 760.11, Florida Statutes.

14. Plaintiff files this action within ninety days of receiving the EEOC notice and within the time permitted by section 760.11, Florida Statutes. All conditions precedent to Plaintiff's Title VII and FCRA claims have occurred, been performed, or been waived.

## Factual Allegations

15. Before transferring to the branch at issue, Plaintiff had worked for Wells Fargo for approximately eleven years with a strong professional record and no comparable disciplinary history.

16. In or about 2023, Wells Fargo promoted Plaintiff from Relationship Banker to Senior Premier Banker and transferred her to a South Florida branch.

17. The Senior Premier Banker position involved providing holistic financial planning and advice concerning investments, lending, retirement needs, debt consolidation, and complex banking needs.

18. Plaintiff was promised hands-on training and support from designated coworkers at the new branch.

19. From Plaintiff's first day at the branch, however, Branch Manager Pedro Alonso spread a false story that Plaintiff had raised her race on her first day. That story caused coworkers to isolate Plaintiff and refuse to provide the promised training.

20. Plaintiff was the only Black woman working at the branch. The manager, financial advisor, and coworkers who subjected her to materially worse treatment were predominantly Hispanic men.

21. Although Plaintiff held the same Senior Premier Banker title as male peers Miguel Yanez and Carlos Hernandez, Wells Fargo assigned Plaintiff secretarial and administrative work that it did not assign to those male peers.

22. Wells Fargo denied Plaintiff office space and placed her at a lesser, highly visible workstation outside the men's offices. When an office became available, Wells Fargo gave it to Enrique Lauren, a Hispanic man in a lower-ranked Business Specialist position.

23. Area President Hector Perez observed and laughed at Plaintiff's inferior workspace arrangement rather than correcting it.

24. Financial Advisor Gabriel Gomez made anti-Black and anti-"woke" remarks in Plaintiff's presence, including during meetings with clients.

25. Coworkers also switched conversations to Spanish to exclude Plaintiff, who is not bilingual, from workplace communications.

26. Wells Fargo denied Plaintiff the training, client visibility, workspace, and professional opportunities afforded to similarly situated male and non-Black employees. Those conditions impeded Plaintiff's performance and advancement as a Senior Premier Banker.

27. Beginning in approximately June 2024, Plaintiff complained to Human Resources and management, verbally and by email, that she was experiencing race and sex discrimination.

28. Human Resources failed to take effective corrective action and deferred the matter to district management on the asserted ground that branch operations were locally controlled.

29. Alonso disclosed Plaintiff's race-discrimination complaint to branch employees while omitting her complaint of sex discrimination. That disclosure caused greater isolation and hostility toward Plaintiff.

30. Between June and November 2024, Plaintiff continued to complain about discriminatory assignments, denial of training and workspace, hostile comments, and retaliation.

31. After Plaintiff complained, Wells Fargo increased her administrative burdens, moved her farther from Premier branding and client visibility, changed her longstanding lunch schedule, yelled at her publicly, and portrayed her to coworkers as lazy.

32. In late October 2024, on the first day of a new wire-transfer process, Plaintiff misunderstood whether the new digital system eliminated the prior practice of separately presenting client identification to a manager.

33. Alonso approved the wire transactions at issue but later caused Plaintiff to receive a Final Warning for the process error.

34. Wells Fargo did not impose comparable discipline on Hispanic male employees who committed the same or similar wire-procedure violations. In particular, Nicholas Linsley repeatedly failed to follow wire-identification procedures without receiving a Final Warning.

35. Plaintiff again complained to Human Resources in early November 2024 that the Final Warning was retaliatory and reflected selective enforcement of policy.

36. Human Resources did not rescind the Final Warning or correct the unequal discipline. It characterized aspects of the conduct as unprofessional but denied retaliation and told Plaintiff to continue documenting events.

37. The Final Warning placed Plaintiff at risk of immediate termination for a minor future issue and threatened her banking career and professional licensing prospects.

38. By December 2024, the discrimination, retaliation, isolation, loss of professional opportunities, and threat of termination had made Plaintiff's working conditions intolerable.

39. Plaintiff submitted her resignation on or about December 25, 2024. Wells Fargo recorded January 4, 2025 as her last day of employment.

40. A reasonable person in Plaintiff's position would have felt compelled to resign. Plaintiff's resignation was a constructive discharge caused by Wells Fargo's discriminatory and retaliatory conduct.

41. As a result, Plaintiff lost wages, commissions, benefits, professional opportunities, and health insurance and suffered emotional distress and other compensable harm.

42. Plaintiff sought replacement work after leaving Wells Fargo and obtained commission-based work that paid less than her Wells Fargo compensation. She continues to mitigate her damages.

**<u>Count I Title VII Race Discrimination</u>**

43. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

44. Plaintiff is a member of a protected class because she is Black.

45. Wells Fargo discriminated against Plaintiff because of her race in the terms, conditions, and privileges of employment, including training, work assignments, workspace, client visibility, discipline, and the conditions that led to her constructive discharge.

46. Similarly situated non-Black employees, including Hispanic male employees, received materially more favorable treatment and were not comparably disciplined for similar conduct.

47. Plaintiff's race was a motivating factor in Wells Fargo's unlawful employment practices, causing Plaintiff damages.

## <u>Count II Title VII Color Discrimination</u>

48. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

49. Plaintiff is a member of a protected class because of her color.

50. Wells Fargo discriminated against Plaintiff because of her color in the terms, conditions, and privileges of employment, including training, work assignments, workspace, client visibility, discipline, and the conditions that led to her constructive discharge.

51. Employees of a different color received materially more favorable treatment, including greater training, professional visibility, workspace, and tolerance for similar conduct.

52. Plaintiff's color was a motivating factor in Wells Fargo's unlawful employment practices, causing Plaintiff damages.

## <u>Count III Title VII Sex Discrimination</u>

53. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

54. Plaintiff is a member of a protected class because she is a woman.

55. Wells Fargo treated Plaintiff less favorably than male employees in training, assignments, workspace, professional visibility, and discipline and subjected her to conditions that led to her constructive discharge.

56. Male employees with the same title were not relegated to secretarial duties, and a lower-ranked male employee received office space denied to Plaintiff.

57. Plaintiff's sex was a motivating factor in Wells Fargo's unlawful employment practices, causing Plaintiff damages.

## **Count IV Title VII Hostile Work Environment**

58. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

59. Plaintiff was subjected to unwelcome harassment based on her race, color, and sex, including a false race-based story spread by her manager, anti-Black remarks, deliberate exclusion, denial of training and workspace, gendered secretarial assignments, public humiliation, and escalating hostility after she complained.

60. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

61. Wells Fargo knew or should have known about the harassment because managers participated in it and Plaintiff repeatedly reported it to Human Resources and management.

62. Wells Fargo failed to take prompt and effective remedial action, causing Plaintiff damages.

## **Count V Title VII Retaliation**

63. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

64. Plaintiff engaged in protected activity by complaining to Human Resources and management about race and sex discrimination and a hostile work environment.

65. After and because Plaintiff complained, Wells Fargo subjected her to materially adverse actions, including disclosing her complaint to coworkers, increasing her isolation, imposing unfavorable assignments and schedule changes, diminishing her professional visibility, publicly disparaging her, selectively enforcing policy, and issuing the Final Warning.

66. The retaliatory conduct would have dissuaded a reasonable worker from making or supporting a charge of discrimination and contributed to Plaintiff's constructive discharge.

67. Wells Fargo's retaliation caused Plaintiff damages.

**<u>Count VI FCRA Race Discrimination</u>**

68. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

69. Plaintiff is a member of a protected class because she is Black.

70. Wells Fargo discriminated against Plaintiff because of her race in the terms, conditions, and privileges of employment, including training, work assignments, workspace, client visibility, discipline, and the conditions that led to her constructive discharge.

71. Similarly situated non-Black employees, including Hispanic male employees, received materially more favorable treatment and were not comparably disciplined for similar conduct.

72. Plaintiff's race was a motivating factor in Wells Fargo's unlawful employment practices, causing Plaintiff damages in violation of the FCRA.

**Count VII FCRA Color Discrimination**

73. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

74. Plaintiff is a member of a protected class because of her color.

75. Wells Fargo discriminated against Plaintiff because of her color in the terms, conditions, and privileges of employment, including training, work assignments, workspace, client visibility, discipline, and the conditions that led to her constructive discharge.

76. Employees of a different color received materially more favorable treatment, including greater training, professional visibility, workspace, and tolerance for similar conduct.

77. Plaintiff's color was a motivating factor in Wells Fargo's unlawful employment practices, causing Plaintiff damages in violation of the FCRA.

**Count VIII FCRA Sex Discrimination**

78. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

79. Plaintiff is a member of a protected class because she is a woman.

80. Wells Fargo treated Plaintiff less favorably than male employees in training, assignments, workspace, professional visibility, and discipline and subjected her to conditions that led to her constructive discharge.

81. Male employees with the same title were not relegated to secretarial duties, and a lower-ranked male employee received office space denied to Plaintiff.

82. Plaintiff's sex was a motivating factor in Wells Fargo's unlawful employment practices, causing Plaintiff damages in violation of the FCRA.

**Count IX FCRA Hostile Work Environment**

83. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

84. Plaintiff was subjected to unwelcome harassment based on her race, color, and sex, including a false race-based story spread by her manager, anti-Black remarks, deliberate exclusion, denial of training and workspace, gendered secretarial assignments, public humiliation, and escalating hostility after she complained.

85. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

86. Wells Fargo knew or should have known about the harassment because managers participated in it and Plaintiff repeatedly reported it to Human Resources and management.

87. Wells Fargo failed to take prompt and effective remedial action, causing Plaintiff damages in violation of the FCRA.

**<u>Count X FCRA Retaliation</u>**

88. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

89. Plaintiff engaged in protected activity by complaining to Human Resources and management about race and sex discrimination and a hostile work environment.

90. After and because Plaintiff complained, Wells Fargo subjected her to materially adverse actions, including disclosing her complaint to coworkers, increasing her isolation, imposing unfavorable assignments and schedule changes, diminishing her professional visibility, publicly disparaging her, selectively enforcing policy, and issuing the Final Warning.

91. The retaliatory conduct would have dissuaded a reasonable worker from making or supporting a charge of discrimination and contributed to Plaintiff's constructive discharge.

92. Wells Fargo's retaliation caused Plaintiff damages in violation of the FCRA.

**Count XI Race Discrimination Under 42 U S C Section 1981**

93. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

94. Plaintiff had and sought to continue an employment contractual relationship with Wells Fargo and was entitled to make and enforce that relationship without race discrimination.

95. Wells Fargo intentionally discriminated against Plaintiff because she is Black in the enjoyment, performance, modification, and termination of her employment relationship, including through unequal training, assignments, workspace, professional opportunities, discipline, and constructive discharge.

96. But for Plaintiff's race, Wells Fargo would not have subjected her to the discriminatory treatment alleged above.

97. Wells Fargo's violation of 42 U.S.C. § 1981 caused Plaintiff damages.

**Count XII Retaliation Under 42 U S C Section 1981**

98. Plaintiff realleges paragraphs 1 through 42 as if fully set forth here.

99. Plaintiff opposed race discrimination and thereby engaged in activity protected by 42 U.S.C. § 1981.

100. Wells Fargo retaliated against Plaintiff because of that protected activity through the materially adverse conduct alleged above, including selective discipline and the conditions that resulted in constructive discharge.

101. But for Plaintiff's opposition to race discrimination, Wells Fargo would not have subjected her to the retaliatory conduct alleged above.

102. Wells Fargo's retaliation caused Plaintiff damages.

**Prayer for Relief**

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant and award:

A. A declaration that Defendant violated Title VII, the FCRA, and 42 U.S.C. § 1981;

B. Back pay, lost commissions, lost benefits, front pay in lieu of reinstatement, and other equitable relief;

C. Compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

D. Punitive damages to the extent permitted by law;

E. Prejudgment and postjudgment interest;

F. Reasonable attorney's fees, taxable costs, and litigation expenses;

G. Appropriate injunctive relief requiring Defendant to cease unlawful discrimination and retaliation and to take corrective measures; and

H. All other legal or equitable relief the Court deems just and proper.

**Demand for Jury Trial**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 6, 2026

Respectfully submitted,

**AN LAW FIRM, P.A.**
Counsel for Plaintiff
7900 Oak Lane, Suite 400
Hialeah, Florida 33016
Telephone: (305) 942-8070
Email: an@anlawfirm.com

By: /s/ Alberto Naranjo
Alberto Naranjo, Esq.
Florida Bar No.: 92923